UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| EDITH FERN BECKETT, | ) | |
| | ) | |
| Plaintiff, | ) | 2:16-CV-362-MCLC |
| | ) | |
| vs. | ) | |
| | ) | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the United States Magistrate Judge, with the consent of the parties and by an order of reference [Doc. 20], for decision and entry of a final judgment. Plaintiff's application for disability insurance benefits was administratively denied following a hearing before an Administrative Law Judge ("ALJ"). This is an action for judicial review of the Commissioner's final decision, per 42 U.S.C. § 405(g). Each party filed a dispositive motion [Docs. 16 and 21] with a supporting memorandum [Docs. 17 and 22].

**I.  Standard of Review**

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence. *McCormick v. Sec. of Health & Human Servs.*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is evidence that is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought

1

to be drawn is one of fact for the jury. *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 841 (6th Cir. 1986). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Listenbee v. Sec. of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## II. Sequential Evaluation Process

The administrative regulations require the Commissioner to utilize a five-step sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's RFC, can he or she perform his or her past relevant work?
>
> 5. Assuming the claimant can no longer perform his or her past relevant work — and also considering the claimant's age, education, past work experience, and RFC — do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4). A claimant bears the ultimate burden of establishing disability under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.,* 109 F.3d 270, 274 (6th Cir. 1997). The burden shifts to the Commissioner with respect to the fifth step if the claimant satisfies the first four steps of the process. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

## III. Background and Procedural History

Plaintiff was thirty-eight years old and was a younger person under the applicable regulations at the time she filed her application (Tr. 30, 133). Plaintiff's prior relevant work experience includes work as a waitress, cook, and a check cashier (Tr. 40). She alleges a disability onset of June 27, 2011, due to depression, diabetes, asthma, chronic obstructive pulmonary disorder (COPD), high blood pressure, and obesity (Tr. 167). She met the insured status requirement through September 30, 2016 (Tr. 14). Accordingly, she must establish disability on or before that date in order to be entitled benefits. 20 C.F.R. § 404.130.

In December 2015, an ALJ conducted an evidentiary hearing; Beckett and a vocational expert ("VE") testified. The ALJ found Plaintiff was not disabled and denied benefits. The appeals council denied a review request (Tr. 1). Plaintiff now appeals to this Court.

## IV. Evidence in the Record

The Commissioner's brief accurately summarizes the medical evidence. With regard to physical impairments, the Commissioner summarized:

> Plaintiff originally reported pain in the ankles, hips, and lower back in April and June 2011 (Tr. 199-202, 291). However, she displayed a normal gait, normal balance, and normal motor skills (Tr. 200, 202, 286, 288, 290, 292). Her provider prescribed a muscle relaxant and referred her for orthotics for her feet and ankles (Tr. 200, 202, 291).
>
> On February 18, 2013, Krish Pruswani, M.D., conducted a consultative examination and opined Plaintiff could frequent lift 30 pounds one-half of the time in an 8-hour day, stand and sit for six hours in an 8-hour day, and sit for 8 hours in an 8-hour day (Tr. 254).

3

In April, May, and December 2013, she denied joint or muscle pain or back pain (Tr. 277, 280, 287, 289). Her provider noted she had no swelling, deformities, or tenderness in arms, legs, or spine (Tr. 278, 281, 286). In August 2013, Plaintiff claimed she has "always had back pain," due to her breasts (Tr. 285).

The state agency medical consultant on April 10, 2014, opined Plaintiff could occasionally lift or carry 50 pounds, and occasionally lift or carry 25 pounds; stand and walk for a total of 6 hours in an 8-hour day; sit for 6 hours in an 8-hour day; and had some postural limitations (Tr. 50-51). The state agency medical consultation upon reconsideration on August 12, 2014, found Plaintiff did not have any severe physical impairments (Tr. 62).

On July 22, 2014, Plaintiff went to the hospital after she "[f]elt a pop after pushing a vehicle," and she had a decreased range of motion in her left shoulder (Tr. 350-51). X-rays showed a possible rotator cuff tear (Tr. 350). In approximately August 2014, she reported burning pain in her feet and legs that radiated to her back (Tr. 369). In approximately August 2014, Beckett reported burning pain in her feet and legs that radiated to her back (Tr. 369).

On August 29, 2014, Plaintiff went to the emergency room for the "sudden onset" of lower back pain (Tr. 335). She did not need to stay in the hospital and was prescribed a muscle relaxant, an anti-inflammatory, and pain medication (Tr. 345). A CT scan of her back showed mild scoliosis and mild lumbar spondylosis, but the disc spaces and vertebral heights were normal (Tr. 334).

On October 14, 2014, Plaintiff saw Mark McQuain, M.D., an orthopedic specialist (Tr. 312-13). During the examination, she walked a little slow but under her own power (Tr. 312). She could also walk on her toes and heels, perform a tandem gait, do a minimum squat, and rise without limitation (Tr. 312). Plaintiff displayed no muscle weakness and normal strength (Tr. 312-13). She also had some tenderness in her lower back, but her range of motion was full and negative on Spurling's maneuver (Tr. 312).

Dr. McQuain opined that her large breasts contributed to her mid-back pain (Tr. 312). X-rays showed some loss of curvature in her cervical spine and in her lower back, there was spina bifida occulta at S1 and some "mild" endplate traction spurs at L4 and L5, with incomplete bridging osteophyte at T11-T12 (Tr. 313). The remaining vertebral bodies were well-maintained and the joints were normal (Tr. 313). The doctor stressed the need for her to continue losing weight and modify her diet (Tr. 313). He also thought anti-inflammatories and a breast reduction would be helpful in reducing her back pain (Tr. 313). Dr. McQuain noted that she did not require any epidural injections or other more aggressive treatments and "simply needs to lose weight" and exercise (Tr. 313).

On December 30, 2014, Plaintiff went to the emergency room after falling down three stops (Tr. 315). She reported pain in her neck, upper back, and arm (Tr. 315).

An x-ray of her cervical spine showed mild degenerative changes, and an x-ray of her lumbar spine showed endplate osteophytes at L3-L4 and L1-L2 but with normal alignment and body heights (Tr. 319). An x-ray of her right hip showed unremarkable joint and joints with no osseous abnormality (Tr. 320). An x-ray of her right shoulder showed normal joint spaces (Tr. 321).

As recently as October 30, 2015, Plaintiff reported her back pain was stable and "doing well" on a muscle relaxant (Tr. 369, 371). She displayed a normal gait, normal balance, normal motor skills, full deep tendon reflexes, and intact sensation (Tr. 371). Throughout the time-period, her providers and Plaintiff mentioned her need for breast reduction; an earlier provider opined that 90% of her back pain is due to her large breasts (Tr. 397). However, she had to quit smoking first (Tr. 384, 391, 395, 397).

With regard to mental impairments, the Commissioner summarized:

In April and June 2011, Plaintiff complained of symptoms of depression and anxiety for the past several years (Tr. 200, 202). She was prescribed anti-anxiety medication (Tr. 200, 202). She started seeing a psychiatrist in June 2011 for medication management (Tr. 244-45, 246). In October 28, 2011, Plaintiff reported doing "great" and said that she had found a job and was socializing (Tr. 242).

In December 2011, Plaintiff reported feeling depressed. However, in February 2012, she reported doing okay overall and stated that her depression and anxiety were controlled and her mood was good (Tr. 237-38, 240). She asked about discontinuing her medication (Tr. 238). In May and August 2, 2012, Plaintiff reported doing okay and some improvement with medication, but she complained of multiple stressors, irritability, and difficulty sleeping (Tr. 233, 235).

In December 13, 2012, Plaintiff reported being depressed due to her life situation. Her medical provider, Shirley Farmer, PMHNP, recommended that she work toward becoming productive again by finding a part-time job, becoming more active with her children's activities, and increasing her social interactions (Tr. 231, 233). In March, May, and August 2, 2013, she said she was stable and reported being in a good mood (Tr. 305-06, 308). In October 2013, Plaintiff reported being depressed, but she was non-compliant with her medication as she had stopped taking an antidepressant and mood stabilizer three months earlier (Tr. 303).

On January 23, 2014, Plaintiff reported no current symptoms of psychosis, but she was still irritable (Tr. 301). She was working on quitting smoking and losing weight (Tr. 301). In July 2014, she was stable and "happy" with medication, reported no side effects, and was "doing well in day-to-day functioning" (Tr. 367). In May, September, and October 2014, she said her depression was controlled and she was doing better and not have any side effects (Tr. 365, 391, 395, 401, 404). And in March 2015, her depression was stable and "doing well" (Tr. 385, 387).

On April 10, 2014 and August 12, 2014, the state agency psychological consultants found the record had insufficient evidence of functional data from Plaintiff, despite repeated requests (Tr. 48, 61).

As recently as October 15, 2015, Plaintiff returned to her psychiatrist, claiming she was not doing well because her mother had recently died from cancer, her teenage daughter was pregnant, and her son was abusing drugs (Tr. 362, 369). She was also taking an anti-anxiety and a sleep aid, and requested a refill of the anti-depressant (Cymbalta) she previously took (Tr. 362). She also stated she was working full-time at a hospital cafeteria (Tr. 363).

During the relevant period time, Plaintiff consistently appeared alert, oriented, calm, cooperative, and appropriately groomed. (Tr. 231, 234, 236, 238, 240, 242-43, 301, 305, 307, 309, 363). She displayed appropriate behavior, eye contact, and rapport, and provided adequate answers, conversed easily, and actively participated in the treatment discussion and decisions (*Id.*). Although she sometimes appeared depressed or anxious, she displayed normal psychomotor activity and did not display signs of psychosis or changes in her cognitive function (Tr. 232, 234, 236, 238, 240, 242-43, 363).

## V.     The ALJ's Findings

The ALJ found Beckett met the insured status requirements of the Act through September 30, 2016 (Tr. 14). The ALJ also found that Beckett had not engaged in substantial gainful activity since June 27, 2011, the alleged onset date (Tr. 14). The ALJ found that Beckett did not have a severe impairment or combination of impairments, thus ending the analysis at step two of the sequential evaluation process (Tr. 15).

## VI.    Analysis

Plaintiff argues that the ALJ's decision is not supported by substantial evidence. A range of sources provide guidance for determining whether a claimant has demonstrated an allegedly disabling impairment is severe.

First, the Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or which has lasted order can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations require impairments to be

6

severe. 20 C.F.R. § 404.1520(a)(4)(ii). If a person's impairment or combination of impairments does not significantly limit the physical or mental ability to do basic work activities, the impairment is not severe and the person is not disabled. 20 C.F.R. § 404.1520(c).

The Sixth Circuit has construed the this step to be a *de minimis* hurdle in the disability determination process. *Murphy v. Sec. of Health & Human Servs.,* 801 F.2d 182, 185 (6th Cir. 1986); *Salmi v. Sec. of Health & Human Servs.,* 774 F.2d 685, 690–92 (6th Cir. 1985); *Farris v. Sec. of Health & Human Servs.,* 773 F.2d 85, 89–90 (6th Cir. 1985). Per this *de minimis* view, "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Farris,* 773 F.2d at 90.

Evaluation of symptoms and pain factors into the analysis of severity. 20 C.F.R. § 404.1528. Symptoms and pain and the extent to which they can reasonably be accepted as consistent with objective medical evidence are considered. Objective medical evidence includes statements as to symptoms and pain, although statements alone will not establish disability. *Id.*

Further, Social Security Ruling 85-2 guides decisions as to impairment severity and provides in pertinent part:

> Inherent in a finding of a medically not severe impairment or combination of impairments is the conclusion that the individual's ability to engage in SGA [substantial gainful activity] is not seriously affected. Before this conclusion can be reached, however, an evaluation of the effects of the impairment(s) on the person's ability to do basic work activities must be made. A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities. If this assessment shows the individual to have the physical and mental ability(ies) necessary to perform such activities, no evaluation of past work (or of age, education, work experience) is needed. Rather, it is reasonable to conclude, based on the minimal impact of the impairment(s), that the individual is capable of engaging in SGA.

7

SSR 85-28, 1985 WL 56856 (1985).

In analyzing whether a mental impairment is severe under the guidelines, the regulations provide for the ALJ to review the impairment's effect on the claimant's functioning in four areas: daily living, social functions, persistence and pace, and existence of episodes of decompensation. 20 C.F.R. § 404.1520a; 20 C.F.R. pt. 404, subpt. O, App. 1 § 12.00C. A claimant with no more than "mild" limitations will not be found to have a severe mental impairment. *Id.* Finally, the claimant bears the burden of showing she has a severe impairment or a combination of severe impairments. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987).

In the present case, Beckett testified that she could not sit for more than 20 minutes without spasms, could not stand for 45 minutes without a burning sensation, could not lift her grandson at birth, and could not lift a gallon of milk. She reported daily crying spells and depression.

The objective medical evidence in the record demonstrates a combination of physical impairments that are "severe," as defined by the Act. Dr. Purswani, who evaluated Beckett at the request of the SSA, assessed low back pain, joint pain, shortness of breath, asthma, GERD, insomnia, depression, social anxiety, and morbid obesity (Plaintiff's BMI was 42.048) (Tr. 254). Dr. Purswani also opined that Plaintiff had the residual functional capacity to lift 30 pounds for half an 8-hour day because of back and joint pain, stand for six hours in an 8-hour day for the same reasons, and could sit for eight hours in an 8-hour day (Tr. 254). These limitations would categorize Beckett as being able to perform work medium work with restrictions. In other words, her physical impairments limited her to less than full work capacity, this clearly suggesting the impairments' severity.

The state agency's reviewing physician, Dr. Carolyn Parrish, opined that Beckett had more than minimal limitations, stating that Plaintiff would have limitations climbing ramps/stairs

frequently, climbing ladders/ropes/scaffolds occasionally, balancing frequently, stooping frequently, kneeling frequently, crouching frequently, and crawling frequently (Tr. 50-51).

Beckett's treating physicians, Medical Care PLLC, show asthma (Tr. 218), lower back pain, degenerative disk disease, right hip and neck pain (Tr. 398). Beckett was also classified as morbidly obese (Tr. 392). On referral from her treating physician, Dr. Mark McQuain said Plaintiff had neck pain, chronic back pain, obesity, and pain in the thoracic spine (Tr. 313).

Concerning mental impairments, Beckett was diagnosed with depression as early as 2009 (Tr. 215). In June 2011, her mental health provider opined that Beckett was suffering from major depressive disorder and panic disorder without agoraphobia (Tr. 249). In contrast, the state agency's reviewing psychologist, Dr. Rebecca Hansmann, found insufficient evidence to determine whether Beckett was severely impaired due a failure to report functional data (Tr. 61).

While the ALJ made a lengthy analysis of the medical history and reviewed weight and credibility, such analysis is better suited to the residual functional capacity determination here since Beckett has been diagnosed with lower back pain, morbid obesity, major depressive disorder, and panic disorder, among others, by a range of medical providers and evaluators which demonstrate on these facts to be greater than a slight abnormality. The scope and number of ailments from which Beckett suffers, as diagnosed by the medical providers and reviewers, are sufficient to clear the *de minimis* standard of "severe." These diagnoses affect her work ability beyond a mere slight abnormality, as demonstrated by the limitations both Dr. Purswani and Dr. Parrish placed on her ability to work. While Plaintiff might be found not disabled, substantial evidence does not support the finding that Beckett does not have severe physical impairments. Remand is warranted pursuant to sentence four of 42 U.S.C. § 405(g).

With regard to her mental impairment, the ALJ and the state agency reviewers were greatly hindered in reviewing Beckett's functioning in the four areas specified in the regulations because failed to complete an adult function report (Tr. 20, 61). However, a review of Beckett's treatment records reveals she consistently reported she was "okay" or fine and discontinued her medical due to improvement, thus suggesting mild limitation at best as found by the ALJ (Tr. 20). Beckett had no episodes of decompensation (*Id.*) and no more than mild limitations in the remaining functional areas. This information does not support a finding of severity as to mental impairments. In fact, Beckett refused to complete the functional assessment form disclosing her activities in this regard. Given that she has the burden to show she has a severe mental impairment, she has not even tried. Substantial evidence supports the ALJ's decision finding no severe mental impairment.

## VII. Conclusion

Accordingly, Plaintiff's motion for judgment on the pleadings [Doc. 16] is GRANTED, the Defendant's motion for summary judgment [Doc. 21 ] is DENIED. This Court REMANDS pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Opinion and Order.

SO ORDERED:

s/Clifton L. Corker
United States Magistrate Judge